UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

UNITED STATES OF AMERICA,

        Plaintiff

-vs-                                                    No. 1:22-cr-20322
                                                     Hon. Thomas L. Ludington

GARDNER DODD,

        Defendant

_____/

## SENTENCE MEMORANDUM
## FOR DEFENDANT GARDNER DODD

### I. Background of the Case

Defendant Gardner Dodd ("Dodd") was charged in this Court by means of a two-count Indictment charging him with: Count 1, Theft of Government Funds, contrary to *18 U.S.C. §641* and Count 2, Social Security Benefit Fraud, contrary to *42 U.S.C. §408(a)(4)*. The offenses were claimed to have occurred from July, 2010 through June, 2017, in the Eastern District of Michigan.

The events which ultimately led to the above charges occurred in and around Cheboygan and Indian River, Michigan, where Dodd lived and owned a restaurant/tavern, known as the Brass Rail for many years. Also

residing in that area was a person who is designated as "M.L.," apparently to protect his identity.

Dodd was a respected business man and member of the community (as attested by letters in his support, provided to the Court, the Probation Department and the government). M.L., on the other hand, had what can fairly be called a troubled past. He was/is an early middle aged man who had almost no family support, his father, immediately before Mr. Dodd became involved, had put him out of his house for repeatedly violating a ban on alcohol in his home. M.L. had little education and no income other than what he could earn from odd jobs. No other relative was willing to offer a home or financial assistance.

However, Dodd knew M.L. casually and was sympathetic to his difficulties. During the winter (probably of 2010), Dodd discovered that M.L. had broken into a back door of the Brass Rail and, without permission, taken refuge in one of the second-story apartments which were rented out to visitors in the warm seasons. The apartment was unheated and not accommodating, and so Dodd was moved to help M.L. rather than to evict him or call the authorities. This situation led Dodd

to offer M.L. a part-time (and generally unneeded) job keeping the tavern clean and washing glasses, etc.

At first the above scenario seemed to work smoothly. M.L. was far better off, had a warm place to stay, in a clean bed, and an actual job. Dodd learned from M.L. that the latter had no established credit nor any type of credit card charging ability to even take care necessities or minor luxuries. Nor was he receiving Social Security benefits - although he may have received them in the past when his family was willing to care for him and possibly receive the government checks. Therefore, Dodd agreed to assist M.L. in filling out the necessary paperwork for an application for benefits, with Dodd as "payee." Contrary to the government's allegations that "M.L. was the victim of misuse by his payee GARDNER DODD," and that "Dodd had allegedly caused M.L. to work for him without pay for years in a substandard apartment over his bar," and further that Dodd "also allegedly spent M.L.'s Social Security benefits on DODD'S own needs. . ." (Presentence Investigation Report, [P.S.R.]   p.6, ¶11), the virtual opposite is true, as will be developed below.

Over a course of several years, M.L. benefitted from the above arrangement by having employment, spending money, a warm room with

shower and limited kitchen and established credit. Dodd actually put items he himself bought and paid for on M.L.'s credit card to significantly expand the latter's credit standing. However, like the ways of mice and men, intentions are wont to go askew. In a relatively short time span, drinking problems, which had formerly plagued M.L., reappeared. His alcohol expenses at the Brass Rail virtually outpaced his wages, his habits in his apartment became slovenly and his attitude suffered. Eventually Dodd was forced to terminate the employment and rental general agreements. Dodd paid off M.L.'s debits on the credit card and the two men parted ways.

A relative of M.L.'s now appeared, suddenly willing to take in M.L. and his newly discovered government allotment; Social Security investigators conducted their own review and charges were brought. Dodd, who had never been in this situation before, admitted to several mistakes in judgment such as being a sloppy guardian and a poor judge of the situation. He does, however, deny being influenced by personal profit or having made any financial gain through his mistakes while he attempted to make something good out of a very bad situation.

He has now entered a guilty plea to Count 2 of the Indictment and awaits sentence, presumably on August 29, 2024 in Bay City, Michigan.

## II. General Background of Defendant Dodd

Gardner Dodd celebrated his 56th birthday on December 22nd of last year, in a lifetime which had been unmarred by a single conviction of any criminal conduct. He, his sister and two brothers were brought up in Cheboygan by "parents who provided them with love and support and in a home that was free from abuse or neglect." (P.S.R., p. 12, ¶53).

Dodd graduated from Cheboygan Catholic High School in 1986 and then attended college at Ferris State and Lake Superior State Universities, but left after three years to obtain a job in a restaurant. He left Michigan temporarily to live with his brother, but returned and in 2000, came to Indian River, where he still resides with his wife, Adrianna, and their three children. (P.S.R., p. 12, ¶¶54-56).

Defendant's wife described Dodd as "the most gentle and patient man she has ever known. . .a great father to their three children." (P.S.R. pp.12-13, ¶58). Letters provided to the Court from people who know him will confirm Adrianne's perceptions of her husband. Dodd is generally in

good health; his Adverse Childhood Experiences test showed no problems and he is not a victim of substance abuse. (P.S.R., p13, ¶¶59-64).

For the most part, Dodd has been self-employed as the proprietor of the Brass Rail Bar & Grill in Indian River, Michigan, which establishment is now for sale, mainly because of the instant case. Gardner Dodd, after almost twenty-five years in that difficult and largely seasonable business, may now be looking forward to at least semi-retirement.

### III. Sentencing Factors Pursuant to *18 U.S.C. §3553*

#### A. The nature and circumstances of the offense and the history and characteristics of the Defendant. *18 U.S.C. §3553(a)(1)*.

Gardner Dodd, based on all the background investigations, character assessments and the true particulars of the "criminal" conduct which occurred herein, is a good and decent human, who tried to help a young man with a troubled past and an uncertain future. The help he offered came back to bite him, partially because he did not know what he was getting himself into and partially because the recipient of his generosity needed a much firmer hand than Dodd possessed.

The offense in the instant case consists of a "guardian" who should never have volunteered to help a troubled individual who had nowhere else to turn.  M.L. was down-and-out, that is he had no one - family included - willing to assist him when M.L. found himself in a small community with no money, no job, no home and no prospects.  Dodd volunteered, though he had no legal or moral obligation, to give him a job, or a place to live or an entree into Social Security benefits.  Yes, Dodd made a crucial mistake by taking on a task for which he was unprepared by experience or discipline.  He was not educated in government-required accounting, nor had he any experience in acting as a surrogate father to an unbridled adult.  Dodd did not keep proper records, used unorthodox procedures and failed to curb the alcohol related problems of M.L.  Of that, he is guilty and as those lapses violated the law the Court will find a realistic punishment for this man.

> **B.   To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.** *(a)(2)(B).*

The offense in the instant case is, of course "serious," if only because it represents a federal felony, and because Mr. Dodd takes it very

seriously. Dodd was, at worst, very neglectful of his obligations as the payee of government funds. He naively believed that if all of the money he became accountable for was spent on M.L.'s welfare, what could be wrong. This is not the way the government sees it, and they are, of course, technically correct. But Dodd acted in good faith, which sadly is not quite good enough.

Dodd will surely pay for this crime by way of loss of reputation, loss of civil rights, loss of his business and loss of a spotless record as a law-abiding citizen. A sentence to prison would be beneficial to no one, and the financial costs are a clear detriment to the government. Prison, in fairness is too great a punishment for a lapse of judgment, wherein there was no financial (or other) gain for Dodd. It takes decades to build an excellent reputation - its loss is priceless. No reasonable or sane person would seek to replicate Dodd's errors just because you might not go to prison.

**C. To afford deterrence to criminal conduct. *(a)(2)(C).***

The nature of this particular crime is not one which should attract an otherwise law-abiding citizen to emulate it. As discussed in paragraph B, above, no sane person would be persuaded that this was a good way to get rich - especially when Dodd, himself, saw no tangible benefit, and horrendous results.

**D. To protect the public from further crimes to the defendant. *(a)(2)(D).***

Defendant Dodd agrees fully with the P.S.R., pp. 19-20, ¶92, wherein Probation Officer, Keith M. Scotts, writes that "[t]he instant offense represents defendant's first conviction. Due to the nature of the offense and the defendant's lack of prior criminal history, protection of the public appears to be of minimal concern."

**E. To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *(a)(3).***

Gardner Dodd has finished his educational needs and vocational training; his health is very good, both medically and emotionally and per

Probation, he "does not present as requiring special conditions. . .to mitigate a risk to the community." P.S.I., p. 20, ¶93.

### F. The kinds of sentences available.

The government has been good and fair enough not to recommend to the Court that Mr. Dodd not be sent to prison for his misguided attempt to help a needy fellow citizen. Did Dodd make mistakes? Yes, or he would not now be before this Court. But he did not make those mistakes with criminal intentions, nor did he personally profit from his failure to conform to the rules of the Social Security system. All of the witnesses to Dodd's treatment of M.L. agree that Dodd gave M.L. a job, shelter and helped structure his life. Sadly, M.L. was not a particularly good employee, squandered his money and ultimately had to be let go. This Court is not bound by the strictures of sentence guidelines.

By statute (*18 U.S.C. §3553(a)(3)*) judges must consider all of "the kinds of sentences available," even if the "kinds of sentence. . .established [by] the Guidelines" permit or encourage only prison. *Gall v. United States,* 552 U.S. 58, 59 & N. 11 (2007). Therefore, this Court is

empowered to depart from almost any guideline score which recommends prison.

    **G.    This section does not apply since Mr. Dodd was the only person convicted or charged in this cause.**

    **H.    The need to provide restitution.**

Mr. Dodd will, of course, pay restitution as ordered by this Court at the time of sentencing. He has made his position on the matter known to the government during plea negotiations. He does ask his counsel to comment on the amount of restitution at sentencing.

## IV.  Conclusion

Gardner Dodd has led an exemplary life, as attested not only by the Presentence Investigation Report, but also by letters to the Court by the people who have known him best, up close and personal, for many years. A sentence crafted by this Court, hopefully not containing a component of incarceration, that benefits society while not being overly severe to Gardner Dodd, will best serve all of the interests of justice.

Counsel here can say little more, other than to urge the Court not to place Mr. Dodd into prison, but, instead to let the punishment fit the crime.

                                                Respectfully submitted,
                                                LAW OFFICES OF JAMES C. HOWARTH

                                                S/James C. Howarth
                                                JAMES C. HOWARTH
                                                Attorney for Defendant
                                                150 W. Second Street, Suite 250
                                                Royal Oak, MI 48067
                                                Telephone Number:  (248) 353-6500
                                                Email Address: james-howarth@att.net
                                                Attorney Bar No: P 15179

                                                FRIED SAPERSTEIN SAKWA, PC

                                                S/Mark A. Rouland
                                                MARK A. ROULAND
                                                Co-counsel for Defendant
                                                150 W. Second Street, Suite 250
                                                Royal Oak, MI 48067
                                                Telephone Number:  (248) 353-6500
                                                Email Address: mrouland@comcast.net
                                                Attorney Bar No: P 58686

DATED: August 15, 2024

I hereby certify that on August 15, 2024, I electronically filed the foregoing paper with the clerk of the court using the ECF system which will send notification of such filing to counsel of record.

                            Respectfully submitted,
                            LAW OFFICES OF JAMES C. HOWARTH

                            S/James C. Howarth
                            JAMES C. HOWARTH
                            Attorney for Defendant
                            150 W. Second Street, Suite 250
                            Royal Oak, MI 48067
                            Telephone Number: (248) 353-6500
                            Email Address: james-howarth@att.net
                            Attorney Bar No: P 15179